Good morning, Your Honors. May it please the Court, my name is David Oppenheim. I am here on behalf of Dmitriy Simonoff, and I would also like to reserve two minutes for rebuttal time. All right. Your Honors, this is a situation where the wrong decision was reached by the wrong Court. So we have two discrete, distinct issues here. The first is whether the underlying Court, the Western District for Washington, actually had jurisdiction to hear the case in the first place. And then if you get past that, whether the result they reached was the correct result under the Federal FACTA statute. So getting past that first point, how do we get past Doe 1? I mean, it seems to me that in the Ninth Circuit we've made distinctions between and among courts in, courts of. Well, Doe 1 did not involve the situation like the clause we have here, which said that disputes shall be resolved in the exclusive jurisdiction and exclusive venue of courts in King County, Washington. And exclusive jurisdiction is a concept, it's black letter law, it means one court system. And so while a venue limitation or even a jurisdictional limitation to courts in a state can take in state and federal courts, which was the holding in Doe 1, once you throw in the word exclusive, that has narrowed it down. And second of all, we're dealing here with a denomination by a county as opposed to by state. What does that make, I guess the other question then is, if we were to go your route, we would also be creating a circuit split with the Fifth Circuit, which combined both this in issue with the one you appropriately point out, the exclusivity issue. The Fifth Circuit's recent decision, I think that was the one that Expedia submitted in the supplemental authority, dealt with kind of the reverse situation. So all they did was they sort of ruminated in their decision about how things might have been different if the clause had used the word in, even though that was, as your Honor points out, an exclusive jurisdiction situation. They didn't actually hold a clause worded like the clause we're dealing with, in that exclusive jurisdiction is vested in the courts in means state and federal. That wasn't that case. Taking the language literally, the federal district court in Seattle is in Kings County, correct? Well, that's actually an interesting point. My understanding is that it is partly in King County and partly in Tacoma in Pierce County. So I would say that that would be another point, looking at this contract language, that the federal court wasn't a court contemplated because it is a court that is physically split between King and Pierce Counties. But there is the northern division of the western district of Washington is located in Seattle, King County, Washington, isn't it? Yes. It used to be in this building. Yes. Yes. I'm just saying that the western district of Washington, as a court system, has locations both within and without King County. And I think the other point that we should not let get away on the forum issue is that this court has held, most recently in Supreme Oil, that ambiguities in forum selection clauses are construed against the drafter. And this is an adhesion contract. Expedia could put whatever text that they wanted to in their user agreement that every user of their website has to agree to, and this is the text they chose. And so to the extent it's the least bit ambiguous, it has to be construed against them. So that's why I feel that the court below didn't have jurisdiction. Even if it did, I think that it reached the wrong result, because fact is a statute that prohibits the printing of more than the last five digits of the card number and the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction. The next section down provides the only limitation in the statute, which is the subsection shall apply only to receipts that are electronically printed and shall not apply to transactions in which the sole means of recording a credit card or debit card account is by handwriting or by an imprint on the copy of the card. This is not a case where we're dealing with a handwritten receipt. This is not a case where we're dealing with an imprint receipt. Congress excluded those types of receipts from the statute. It did not exclude Internet receipts. Would you agree that if the language said electronically displayed, then we wouldn't be here? Absolutely. But it didn't say that. It doesn't. It creates an ambiguity that is why we're here today. Absolutely. That would have been clear that that was their intent. You just argued that ambiguity should be construed in favor of the recipient or against, let me put it, against the drafter of the form selection clause. If we were to construe the ambiguity in the statute and to say that all the online distributors who may have followed Expedia or just look at Expedia alone guessed wrong, I have no idea why they printed the expiration date. That I don't understand. But they did. Okay. Whether they printed it or not is the issue, but they displayed it. But the scope of what occurs on liability if the retailer is held to have included more information than it should have under an ambiguous congressional statute, does that factor in at all? Well, let me tell you why I'm mindful of it. Because in California there was a decision that recently said that asking for zip codes, retail stores that ask for zip codes, which gas stations also do when you put your credit card in, they'll ask you to verify your credit card by putting in your zip code, held that the stores, at least the stores who have been requesting the zip code information, violated the law. The liability, the statutory liability under those statutes is, in an aggregate manner, quite substantial. They didn't prevent the courts from imposing it, but it does seem there's a consequence here. And if you're relying on ambiguity in a statute, how do you think that cuts as far as our decision making? I think it cuts in favor of the protection of the statute. And I think it cuts that way for a few reasons. First of all, we need to keep in mind that FACTA is a remedial statute. Why don't you start with what the purpose of the statute is? Well, the purpose of the statute is twofold. It's to protect consumers and to protect consumers specifically against identity theft. And so the Congress made this law in order to provide a very strong incentive with some penalties to get retailers, people of all stripes who take in consumer credit card information and give back receipts to get them to prevent those receipts that they give back from being used by identity thieves. Okay. So how in the electronic world that we're talking about, when the receipt is sent, it's sent electronically, at least in my experience, in order to print, to jump into that label on your computer, you actually have to, as the reader of the email, activate that and reduce it to a paper copy. That is probably true, but one of the purposes, as we've all agreed, is to prevent the dumpster diving, as it's called, identity thieves from going to the trash and finding receipts. And to me, it doesn't make much sense to say that it's a big danger for somebody to find this, but finding this, there's no way that's ever going to happen. And as for the notion that it's different because to get to the paper form, the user has to do something, which is print out the receipt that they were sent. The whole statute is to protect against the consequences of the consumer doing something, which is throwing the receipt in the trash in the first place. So really what this is, is a powerful incentive for the retailer to save consumers from having to go through that. One of the real issues seems to me to be the timing of the statute. If you could rewrite this today, and e-commerce has changed dramatically over time. And this is talking about cash register machines. Those became, of course, you remember national cash register? Ding, ding, ding, ding, ding. And then they became a computer company because cash registers became computerized. So what this is doing is it's sort of entering the electronic world midway, and we're over here right now in a different frame. So my question is, isn't this something best left to Congress, not to the courts to interlineate? I don't think so. I think that Congress set forth a broad protective statute that had a very narrow exception and contemplated that things would change over time and that the protection should be there. I mean, that's true of much of what Congress does, which is why laws can live long lives and not have to be revisited every few years as society evolves. All right. Well, you've used your time, so we will hear from Expedia's counsel. Thank you, Your Honor. May it please the Court, Your Honors. My name is Rod Strickland. I represent Expedia. Judge Lasnik properly denied Plaintiff's motion for remand because Expedia did not waive its right to remove to federal court by using the phrase in King County in its form selection clause. Could have done a better job of drafting. Perhaps, Your Honor, but the clause is not ambiguous. There was a suggestion a moment ago that the clause is ambiguous. The clause says exclusive jurisdiction and venue in King County. That would mean the courts that are in King County, such as this one.  It could say state or federal. We need to interpret the clause based on what it says, though, and what it says is in King County. So it could have said a lot of things. It could have said it in different ways, but the way it did say it is not ambiguous and is completely consistent with the Fifth Circuit opinion and the Eleventh Circuit opinion. Mr. Counsel, your colleague for appellant makes the argument, which I guess is technically correct, that the federal court for the Western District of Washington is not solely in King County. It's also in Pierce County. I don't know if it's occasionally in Snohomish, but it's at least all the time in Pierce County and King County. So is it a court in King County? Yes, the clause says the courts in King County, and this federal district court is a court in King County. So I guess you could file in tax court here, too. That would be up to the court to determine if it had jurisdiction, but under this you could file in the tax court, the Social Security court, I don't know. Depending on the subject matter of the lawsuit, absolutely. Absolutely, because that is a court, one of the courts in King County, and that's what the clause says. Judge McEwen referenced the AOL case, and that's exactly right. The AOL case, the clause, in fact, did use the term exclusive jurisdiction. That clause said exclusive jurisdiction in the courts of Virginia, and the Ninth Circuit held of Virginia means sovereignty. The word of connotes sovereignty, so they were limited to the state court. So the Ninth Circuit went on to say that using the word in refers to a location, and that's what we have here. There was also a reference made to the Fifth Circuit case. That's the Alliance Health case. In fact, the Alliance Health case does use the phrase exclusive venue, and in that case the Fifth Circuit said that it's an exclusive venue in Hamilton County, Mississippi, and the court held that the federal district court is a court in Hamilton County, Mississippi, and thus. Okay. How about if we address the merits for just a few minutes, or more than a few minutes? Absolutely. Part of the argument an appellant makes is that this is a remedial statute, and so it should have a liberal construction. So what's wrong with that argument? We do have a long history going back I'm sure hundreds of years of courts saying that when you have a remedial statute, it should be liberally interpreted to look at the mischief that it was trying to cure. And if the mischief is dumpster diving, and if the electronic computer display when printed could fuel identity theft, then why shouldn't that be covered? Well, several reasons, Your Honor. First, the first rule of statutory construction is to apply the common and ordinary meaning of the words. That's numerous Ninth Circuit decisions say that. We would do that, but if it's ambiguous, then you can look at. Well, I would argue this statute is not ambiguous, but let me refer to what the Supreme Court said just last year. It is our function to give the statute. It was referring to a different statute, not the one in here. It is our function to give the statute the effect its language suggests, however modest that may be, not to extend it to admirable purposes it might be used to achieve. That's Morrison v. National Australia Bank. And that's exactly right. We interpret the statute based on the language, not on some societal ill that may or may not be able to be cured if it's extended. Second, to address your question, if the customer prints the receipt, it is not the conduct does not fall within FACTA. The statute only applies if the merchant prints the receipt that it then provides to the cardholder. If you use Judge Fischer's example, if he gets a receipt and he prints it on his home computer, that is not covered by the statute because it only applies when it's printed by the merchant. So the plaintiff's position, and the only way the plaintiff can prevail on this interpretation, is that print, as used in that statute, means transmit by email. If it's printed by the consumer at home, that's not conduct covered by the statute. Print has to mean, under his definition, it has to include transmitting by email. Well, no, it actually, I think that under his definition it could include digital print without actually inserting the word digital. So, for example, when you undertake a transaction and then the business sends you back a receipt, whether by email or some other, let's say it's an electronic receipt, the same concerns adhere there apart from dumpster diving and physical printing because you can have, for example, we know there's all kinds of people that do, in effect, digital dumpster diving, and that there are all sorts of security risks with credit card numbers and other data that are being transmitted in non-secure electronic forms. So the real question is, you definitely get a receipt, and on the receipt are these numbers. Is that not printed on that receipt? Digitally printed? No. In that example, it's displayed upon a computer screen. And the statute doesn't use the word display. It doesn't use the word sent. It doesn't use the word transmit. Well, that's where I started with cancel. But the other question is, perhaps print takes on a broader meaning when it's going to be electronic. In other words, it takes on a meaning in the electronic world that's different than we think of as in the past little piece of receipt paper that counsel had. But the statutory rule is the ordinary and common meaning of the word. Where do you define it? The word print. What about electronically printed, which is what the statute actually says? Well, no, the statute, Section A, prohibits merchants from printing the credit card information. This type of section shall apply only to receipts that are electronically printed. That's the next section. The first section identifies the prohibited conduct, says you cannot print on receipts provided to the cardholder at the point of sale. The next section then provides an exception reflecting that it doesn't apply to all forms of paper receipts. Certain types of paper receipts are excluded. And that's what Section B says. Electronically printed simply means printed by a device like a cash register, or to continue to quote the statute, another device that electronically prints receipts. So you're saying electronically printed within the meaning of the statute, in your client's view, does not include electronically displayed on a computer? Correct, Your Honor. In my client's view, in the view of the Seventh Circuit and 11 of the last district courts to consider this issue have held that print, as used in Section A, does not mean anything other than the common and ordinary meaning of the word, which is to reduce the type of paper. Right. But, of course, the common ordinary meaning of the word print has evolved over the electronic age a bit. So I don't think Judge McKeown's question is a bad one because, you know, originally printed meant something like with a printing press. You know, they have to print something with typeset letters, and obviously that's not done even when a merchant prints something electronically. There's no print in the classical sense used. But the common denominator from the printing press down to the receipt that Mr. Oppenheimer held up is it is putting letters, alphanumeric forms, on paper or something else tangible. Can I come back and make sure in that answer? I'm looking at the statute, okay? And it says truncation of credit card and debt card numbers. One, in general, except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than, et cetera, et cetera. Number two, limitation. This subsection shall apply only to receipts that are electronically printed. Correct. So I didn't understand your answer. Why doesn't print in this subsection mean electronically printed? It does, but that means printed by, if you look down at Section 3, that means printed by a cash register or other device that electronically prints receipts. This section that you just read from, electronically printed, has been interpreted by the courts to reflect an exception to paper. It doesn't say electronically transmitted. It doesn't say electronically. I understand it doesn't say. It doesn't say electronically printable. But it says it's electronically printed, which is different from print. In other words, it's a subset of print. Would you say that? It is a subset of print. It excludes print by handwriting. Yes. It excludes print by the machines that used to slide across cards. It applies only to receipts printed by some electronic device. For example. In other words, you have to read statutes in context. Correct. So if you look at the limitation, it's trying to say that even though they are printed pieces of paper, if it's a handwritten printing or if it's the, you know, whatever that's called, the sliding across that some cab drivers still have and can take your credit card, then that is excluded because of the, really because of the practicalities of that. Correct? Exactly. Certain types of handwritten or certain types of receipts, paper receipts, are excluded from the statute. It covers those that are printed by a cash register or other machine or device that electronically prints. And the word electronically really is modifying printed as a means of print, correct? That's correct. Counsel, let me ask a question on that, which is a little bit, a different way to look at it. I haven't decided my view on this. But when I look at my computer monitor at home, and if I received an email giving a credit card number and an expiration date, then why couldn't I in a sort of a common sense way say, well, that card number and date are printed on my display monitor. They're printed electronically on my display monitor. I can look at them. I could recite them. They're not printed out on a piece of paper, but they're electronically printed on my display. So what's wrong with that kind of argument? Two. First, I would argue that if it is on your display because you're the one who has opened the email, then you're the one who has technically done the printing. But second, the common and ordinary meaning of the word print does not include just displaying something. The dictionaries we cite throughout our papers make that fairly clear. It's reducing something to paper or something similar. The context of the statute referring to cash registers, the basis of the effective date refers to cash registers, further reflects that in the context of this statute, it means put to print. It's to quote the Seventh Circuit quoting one of the district courts. If a judge tells his or her law clerk, print me a case, it doesn't mean show it on my computer screen and it doesn't mean email it to me. Because print, as that word is commonly and ordinarily used, means put to paper, like to print out. You know, counsel, I'm looking at the statute on my iPad. I asked my clerks to put it on my iPad so I could read it just as I would read it if it were in my book. To say that in the common parlance today that print means only on paper is pushing the envelope, I would say. The word print still means paper. I would assume somebody didn't say I'm going to print it to your iPad because that's not how the word print is used. That's not how it was used in the statute and that's certainly not how the courts to consider the issue have interpreted that word in its common and ordinary meaning. Well, we've not always been bound by other courts. Absolutely. Unless there's other questions. I have no questions, thank you. Anything else? No. Thank you. I'll give you an extra minute since we've took up all your time with questions as well. Thank you, Your Honor. I don't know that I'll take the full minute. I just wanted to respond to a few things. My colleague referred to the reference to cash registers, but as Your Honor is no doubt aware, most cash registers these days are computers. So I see no difference between the computer we're dealing with in this case and the computer that my colleague's referring to. I think Your Honor's made most of my points about what the word print means in the 21st century better than I could have. So certainly I think that the word print as it's used in the statute encompasses the conduct alleged. Well, it's kind of circular because it says any cash register or other machine or device that electronically prints. So we still keep coming back to what is electronically prints. Right. And what the conduct that this statute is getting at is a retailer, somebody who sells goods, marking things on a receipt and putting it out in the world. And I think that's what we're dealing with in this case. And my last point, which I didn't get to before, but I think is another answer for why the statute should be interpreted in this way in this day and age, is that Congress wanted this to be the definitive answer for protection for consumers for credit card information being given out. They put FACTA as part of the FCRA's preemption clause, meaning that anything covered by FACTA preempts state regulations on that topic. So it wouldn't make a whole lot of sense if Congress declares an intent to clear the field and declares an intent to say this is going to be a uniform protection that's out there and then leaves a significant area that would be covered by a lot of these state statutes outside the scope of FACTA. Thank you. Thank you, Your Honor. I'd like to thank both of you for your arguments and briefing. It's a very interesting case. Simonoff v. Expedia is submitted. The Enerways v. Energeo is submitted on the briefs and we're adjourned for this morning. All rise. This court for discussion is adjourned.
judges: McKeown, Fisher, Gould